IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| * * * * * * * * * * * * * * * * | C.R. NO. 05-121ML |
| UNITED STATES OF AMERICA * | |
| VS. * | JANUARY 4, 2006<br>10:00 A.M. |
| RICHARD VANENBURG a/k/a *<br>Fat Don * | |
| * * * * * * * * * * * * * * * * | PROVIDENCE, RI |

BEFORE THE HONORABLE MARY M. LISI,

DISTRICT JUDGE

(Change of Plea)

APPEARANCES:

FOR THE GOVERNMENT: STEPHANIE S. BROWNE, AUSA
U.S. Attorney's Office
50 Kennedy Plaza
Providence, RI 02903

FOR THE DEFENDANT: EDWARD C. ROY, JR., ESQ.
Federal Defender's Office
10 Weybosset Street
Providence, RI 02903

Court Reporter: Karen M. Zinni, RPR-RMR-CRR
One Exchange Terrace
Providence, RI 02903

Proceeding reported and produced by computer-aided stenography

5 JANUARY 2006 -- 10:00 A.M.

THE COURT: This is the matter of the United States versus Richard Vanenburg. Are you Mr. Vanenburg?

THE DEFENDANT: Yes.

THE COURT: Mr. Vanenburg, you understand that you're here today to enter a plea of guilty to the Indictment in this case, that is, to Counts I, II and III of the Indictment, which charge you as follows: First, with distribution of 5 grams or more of a mixture and substance containing a detectable amount of cocaine base in violation of Title 21, Sections 841(a)(1) and (b)(1)(B); the second charge is with possession of two firearms in furtherance of a drug trafficking offense in violation of Title 18, Section 924(c)(1)(A); and finally, with possession of a firearm after having been previously convicted of a crime punishable by imprisonment for more than one year in violation of Title 18, Section 922(g)(1).

Do you understand that you're here today to plead guilty to those three charges?

THE DEFENDANT: Yes.

THE COURT: Would you raise your right hand, please.

(Defendant sworn)

THE COURT: Mr. Vanenburg, I'm going to be asking you a series of questions this morning. The purpose of my asking you these questions is to make sure you understand why you're here and the consequences of entering a plea of guilty to these three charges.

If at any time during the questioning you don't understand a question, I want you to tell me that so that I can give you further explanation. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: If at any time during the questioning you wish to speak to Mr. Roy, I want you to tell me that, and I will give you an opportunity to speak to him. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Now, I'm advising you that you're under oath, and if you answer any of my questions falsely, those false answers can be used against you in another prosecution for perjury or for making a false statement. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Would you state your full name for the record.

THE DEFENDANT: Richard Stewart Vanenburg.

THE COURT: How old are you?
THE DEFENDANT: Thirty-five.
THE COURT: You can move over or move the mic closer to you, whatever is more comfortable for you; but I need you to speak directly into it so that we can hear you. You said you're 35?
THE DEFENDANT: Yes.
THE COURT: How far did you go in school?
THE DEFENDANT: High school diploma.
THE COURT: And where was that from?
THE DEFENDANT: Brooklyn, New York.
THE COURT: After leaving high school, did you have any further education?
THE DEFENDANT: Yes.
THE COURT: Where was that?
THE DEFENDANT: Bushwick Outreach.
THE COURT: I didn't hear the first part.
THE DEFENDANT: Bushwick Outreach.
THE COURT: Bushwick Outreach. What kind of a program is that?
THE DEFENDANT: That's like a construction, you know, home improvement operation, like, contracting, carpentry, painting.
THE COURT: Okay. Do you have any difficulty at all reading English?

THE DEFENDANT: No.

THE COURT: Have you been treated recently for any mental illness or addiction to narcotic drugs of any kind?

THE DEFENDANT: No.

THE COURT: Are you currently under the influence of any drug, medication or alcoholic beverage of any kind?

THE DEFENDANT: No.

THE COURT: When I say drugs and medication, I'm including anything that a doctor may have prescribed for you or even if you took something this morning for a headache or a cold. Have you had any medicine at all today?

THE DEFENDANT: No.

THE COURT: Now, have you received a copy of the Indictment in this case?

THE DEFENDANT: Yes.

THE COURT: Have you discussed the charges in that Indictment and the case in general with Mr. Roy?

THE DEFENDANT: Yes.

THE COURT: Are you fully satisfied with the advice and representation you've received in this case from Mr. Roy?

THE DEFENDANT: Yes.

THE COURT: Now, I have a copy of a plea agreement, Mr. Vanenburg, that I understand you signed this morning.

THE DEFENDANT: Yes.

THE COURT: Mr. Roy, do you have that?

MR. ROY: I don't have a copy yet, Judge. It was only signed this morning.

THE COURT: Here. Actually, it's an amended plea agreement.

MS. BROWNE: Your Honor, the only difference between the original that was filed and the amendment is that I had neglected to include among the Government's promises the provision for the possibility of a 5K motion should the Defendant's cooperation --

THE COURT: Well, I'm looking at the one that I had which -- so you've added paragraph 2(e)?

MS. BROWNE: Yes, ma'am. That's the only difference between the two.

THE COURT: Okay. Mr. Vanenburg, I'm going to give back to you a copy of the plea agreement that you signed this morning so you can follow along. If you look at the back page, you should see your signature. Do you see that?

THE DEFENDANT: Yes.

THE COURT: Before you signed that, did you read

this plea agreement?

THE DEFENDANT: No.

THE COURT: There was a plea agreement -- Mr. Vanenburg, that plea agreement you have in your hand, the front page of it says amended plea agreement. Do you see that?

THE DEFENDANT: Yes.

THE COURT: There was an earlier version of that plea agreement that you also signed. Do you see that? Mr. Roy just gave it to you.

THE DEFENDANT: Yes.

THE COURT: That one should also have your signature on it. Do you see that at the back page?

THE DEFENDANT: I see it.

THE COURT: Before you signed that one, did you read that?

THE DEFENDANT: Yes.

THE COURT: Now, if you look at the one that says amended plea agreement that you signed this morning, the difference between the two is that the Government added a provision which is really to your benefit, and that's on page 4. It's in the middle of the page. It's paragraph (e). Do you see that?

THE DEFENDANT: I see it.

THE COURT: We're going to talk about that

paragraph in a few minutes in great detail, but essentially what that paragraph does -- we're having problems with the computer, so kind of bear with us. You're going to keep hearing dings and rings and whatnot.

THE DEFENDANT: That's all right.

THE COURT: Okay. What that paragraph says, and as I said, I'll get into it in more detail later on, apparently the Government forgot to put that in because there's a provision in the plea agreement that says you're going to cooperate with them, and that's part of your obligation.

What that paragraph does is say, because you're cooperating, the Government has agreed that if you provide them information, they'll file a motion so that you can get a lower sentence. Okay?

THE DEFENDANT: Okay.

THE COURT: That's the difference between the two plea agreements, the one you signed initially and the one that says amended plea agreement. If you want to take a minute and read through the whole thing, you can do that to satisfy yourself; but that's the difference, as I understand it.

THE DEFENDANT: If that's the only difference, I'm all set.

THE COURT: Excuse me?
THE DEFENDANT: If that's the only difference, I read the other one, so I'm all set.
THE COURT: You're all set. That's what I wanted to make sure that you understood.
THE DEFENDANT: If that's the only thing changed, then --
THE COURT: That's the only change.
MS. BROWNE: That is the only change.
THE COURT: And it was an oversight because I have to tell you, when I read the first one, I said there's something missing here because under the provisions that say what you're going to do, which one of the things is you've agreed to cooperate with them, usually there's a provision under the Government's obligations that says what you get in exchange for that. So that's what that addition is. Okay?
THE DEFENDANT: Yes.
THE COURT: Do you understand what I'm saying?
THE DEFENDANT: Yeah.
THE COURT: All right. So what I'm going to do now is, I'm going to go through this amended plea agreement with you to make sure that you understand all of the provisions and that those are the terms of the agreement as you understood them at the time that you

signed it.

If you have questions about this plea agreement and how it operates, today is the day to ask those questions. Okay? Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Okay. Let's start, then. You have the amended plea agreement in front of you with paragraph 1(a). That's on page 1. And you see it says "Defendant's obligations." What that means is that these are the things that you have agreed that you will do.

Paragraph 1(a) says you will plead guilty to the charges in Counts I, II and III of the Indictment, and those are the charges I read off to you at the beginning of this hearing. So you understand that's what you've agreed to do. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Look down to paragraph 2(b) -- rather, 1(b), which is at the bottom of the page. You have agreed and acknowledged that you have previously been convicted in the State of Connecticut for sale of a hallucinogen or narcotic, and then the docket number is given, and for possession of narcotics, and again the docket number is given, and both of those charges constitute convictions for felony drug offenses under

federal law. Do you understand that?

THE DEFENDANT: Can I ask my lawyer something?

THE COURT: Yes.

(Defendant confers with counsel)

THE COURT: Okay, Mr. Vanenburg? The only question I asked you is, if you look at that paragraph 1(b), it says that you admit that you've previously been convicted in the State of Connecticut of two drug offenses, both of which constitute convictions for felony drug offenses under federal law. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: The next sentence of that paragraph says that you agree that you will not seek to vacate any prior criminal convictions, including those two Connecticut charges that I just talked about, except that you may pose a challenge on constitutional grounds only as to one of them, that is, the sale of a hallucinogen or narcotic. Do you see that? Did you talk to Mr. Roy about that? So you retained the right to challenge that conviction on constitutional grounds.

THE DEFENDANT: Excuse me, your Honor.

MR. ROY: Do you understand that?

THE DEFENDANT: I wasn't interrupting her. I still don't understand this part of the agreement.

THE COURT: Let me see if I can break it down for you. Mr. Roy's right. You can't talk while I'm talking because this lady is taking down every word that's being said. She can only do one of us at a time.

THE DEFENDANT: I apologize, your Honor.

THE COURT: So just wait until I'm done, and I'll wait until you're done. Let me start over again because this is important. Paragraph 1(b), look again at page 1, bottom of the page, it says that you would agree and acknowledge that you have been convicted previously in the State of Connecticut of two drug offenses.

One is the sale of a hallucinogen or narcotic, that's right down there at the bottom of page 1, and the second one is possession of narcotics. That goes over to the top of page 2. Both of those convictions under federal law constitute felony drug offenses.

That's important because of the way federal law works on the sentencing. All right. So you understand you have those two prior convictions?

THE DEFENDANT: Yes.

THE COURT: The next sentence says you have agreed that you will not ask a lawyer to go into court in Connecticut to file a motion to vacate those prior

convictions except that you have retained the right under this plea agreement to challenge the sale of a hallucinogen or narcotic on constitutional grounds.

So that one you've retained the right to go in and say, you know, this was an unconstitutional conviction, whether it was a plea or by jury trial. I don't know what it was. You can go in and challenge that one only on constitutional grounds; but as to the other one, you've given up any right to challenge it. And as to that hallucinogen or narcotic one, whatever it was, you can't go in on any grounds other than constitutional grounds. Do you understand that? It's a little confusing, I know.

THE DEFENDANT: I understand, your Honor. You know, I read it and understand it; but the problem I have with that is the 1991 conviction, you know, the 851 is an enhancement. You know, it's going to double my time, so --

THE COURT: The 1991?

THE DEFENDANT: Yeah.

THE COURT: But you've agreed you're not going to do anything about that one.

THE DEFENDANT: Right. My lawyer keeps telling me I can't still. That's why I asked, you know, a few minutes ago can I talk to him. He still tell me that

he still can challenge it.

THE COURT: No, you can't, not the 1991.

THE DEFENDANT: That's what I kept asking him, and he's telling me -- that's why I asked you can I talk to him. He said that he's still going to challenge --

THE COURT: Not under the terms of this plea agreement.

THE DEFENDANT: So to my understanding, is 851 on just one prior conviction? Right?

THE COURT: That's right, and that essentially is a gift because you've got two priors. You've got three priors. If the Government were to file the 851 charging the two priors, you would be looking at a mandatory life term. That's a little further on, isn't it? Is this the case, or am I mixing it up with another one?

MS. BROWNE: I think that's a different case, your Honor.

THE COURT: That's a different case. I'm sorry. Forget that. So, yeah, I mean, they've got the prior conviction, and that doubles your sentence.

THE DEFENDANT: I just want my lawyer to explain to me exactly because I just asked him the same thing. He said that -- I said, But I'm waiving my right to

challenge the 1991 conviction. He said I could challenge the '99 conviction on constitutional error.

THE COURT: Correct.

THE DEFENDANT: And so then I asked him, I said, What about the '91? I'm waiving that right to challenge that and just the fact that the '91 conviction is enough to 851 me. So he said that he still is going to challenge it, the 1991 conviction.

THE COURT: You've given up your right to challenge the 1991 conviction under the terms of this plea agreement, Mr. Vanenburg.

THE DEFENDANT: So under this term of the plea agreement, when I plead out, if I say I understand everything to this, that no matter what I'm 851?

THE COURT: Correct.

THE DEFENDANT: You didn't tell me that, Roy.

THE COURT: Why don't you sit down and talk to Mr. Roy, Mr. Vanenburg. This is important. It's important that you understand all of the consequences of this plea agreement.

So sit down and talk to Mr. Roy about it, ask him any questions you have.

THE DEFENDANT: All right, your Honor. Thanks a lot. I'm not trying to make this no more difficult than it is. I just want to get it straight, what's

going on. I apologize.

THE COURT: I want you to get it straight, also, because I won't take your plea unless you fully understand it and unless you are fully in agreement.

If you're not, I won't take your plea, and you'll have to go to trial. And at trial, I don't know what's going to happen.

So this is the deal that you've negotiated with the Government. You need to be able to understand every aspect of it. I have to be satisfied that you understand every aspect of it. So that's why I said to you, if you have questions, today is the day to ask those questions.

We're not going to renegotiate this deal because this is the deal that you and your lawyer have negotiated with the Government. Ask Mr. Roy whatever questions you want to ask him.

THE DEFENDANT: All right. Again, I apologize for the delay.

THE COURT: That's all right. Not a problem.

(Defendant confers with counsel)

THE COURT: Mr. Vanenburg.

THE DEFENDANT: Yes.

THE COURT: Do you wish to proceed this morning or not?

THE DEFENDANT: Yes.

THE COURT: I have another matter that I --

THE DEFENDANT: Yes, I do, your Honor.

THE COURT: Okay. You understand, again, this is a plea agreement. It's like a contract that you have with the Government. Do you understand that?

THE DEFENDANT: Say that again, please.

THE COURT: This is like a contract that you have with the Government. You've agreed to do certain things, and in exchange the Government has agreed that it will do certain things. Okay?

THE DEFENDANT: Yes.

THE COURT: So I'm going back to that provision that says you've got two prior drug offenses in the State of Connecticut. Were those both federal offenses?

MR. ROY: Both state, Judge.

MS. BROWNE: Both state, Judge.

THE COURT: Both state. So you have two prior convictions in state court over in Connecticut for drug offenses; and under federal law, they qualify as felony drug offenses, which will be used toward calculating what your sentence is going to be in this case.

You've agreed under the terms of this plea agreement that you're not going to try to vacate those

prior convictions with the exception of the most recent, the '99 charge, where you've retained the right under the terms of this plea agreement to go back into state court in Connecticut and argue to the judge there that that was an unconstitutional charge or an unconstitutional plea or whatever it is. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Now, you have given up your right to challenge the other, the 1991 conviction. Do you understand that?

THE DEFENDANT: Yes. Yes.

THE COURT: Is that your -- and you understand that that's part of your plea agreement. I know you may not like it, but that's what you've agreed you're going to do. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: You can't come back here later and say, I don't care what the plea agreement says, I'm going to Connecticut, because if you do that, you will have undone the entire plea agreement. Then the Government's free to do whatever they want. Do you understand that?

THE DEFENDANT: Can I ask just one question?

THE COURT: Yes.

THE DEFENDANT: Just one question about this. So whether I vacate my 1999 conviction or not, if I vacate the '99 conviction, I'm still 851 because of my 1991 conviction?

THE COURT: Correct.

THE DEFENDANT: And a simple possession you can be 851'd on?

THE COURT: Oh, yes. I know. It doesn't sound right, but that's the way the law is. I don't make the laws. Okay. You got a complaint, write to Congress, but that's the way it is. Is this your first time in Federal Court?

THE DEFENDANT: Yes, it is.

THE COURT: It's a whole different world.

THE DEFENDANT: Like night and day.

THE COURT: Excuse me?

THE DEFENDANT: Like night and day.

THE COURT: Absolutely. Okay. So I understand your unhappiness, but that's just the way it is. Okay. Do you have any other questions about that provision of the plea agreement?

THE DEFENDANT: No, your Honor.

THE COURT: Okay. Let's move ahead, then, to paragraph 1(c), which is in the middle of that page. Okay. There are three separate parts of it. You have

agreed, Mr. Vanenburg, to cooperate with the Government. Do you see that?

THE DEFENDANT: Yes.

THE COURT: And what that means is that you've agreed that you're going to meet with the Government and provide them information, that you've agreed that you'll appear and testify whenever and wherever they need you to testify and, finally, that all the information you give them has to be truthful.

If you try to fool them and give them a bunch of baloney, the deal's off. So whatever information you give them has to be the truth. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Okay. Now, if you go ahead to page 3, at the top of the page, see that paragraph number 2, it says "Government's obligations"?

THE DEFENDANT: Yes.

THE COURT: This is what the Government has agreed it's going to do in exchange for all the promises you made, the ones that we just went through. Okay?

In paragraph 2(a), the Government has agreed that it will recommend a term of imprisonment for you at the middle of sentences for your offense level under the guidelines. Did Mr. Roy talk to you about how the

guidelines work?

THE DEFENDANT: Somewhat.

THE COURT: Okay. Did he show you the back of the guideline book that has all of the numbers in it?

THE DEFENDANT: Yes, I know the guidelines.

THE COURT: You know the guidelines?

THE DEFENDANT: Yes.

THE COURT: Have you been doing some research?

THE DEFENDANT: A lot.

THE COURT: Okay. So you've read the guidelines, and you know how they work?

THE DEFENDANT: Yes.

THE COURT: And so the Government has agreed that it's going to recommend a sentence at either the middle of your guideline range or the mandatory minimum term, whichever is greater. And I think there's a mandatory minimum term here of 10 years. Is that right?

MS. BROWNE: On the drug charge, yes, your Honor.

THE COURT: On the drug charge. Okay. So at the very least -- and I think then there's one that's a consecutive charge.

MS. BROWNE: Yes. The 924(c) is five years consecutive.

THE COURT: Is five years consecutive. So at the very least what you're looking at is a sentence of 15 years. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Now, that paragraph also says, though, if you ask Mr. Roy to file a motion for a downward departure or if you ask Mr. Roy to advocate a sentence below your guideline range, then the Government can recommend any term of imprisonment within your guideline range. Do you understand that? Do you want me to go over that one again?

THE DEFENDANT: I heard you, your Honor. So I couldn't get nothing less than my guideline range?

THE COURT: If you have Mr. Roy ask for something less than the guideline range, what happens then is that the Government is relieved of its obligation to recommend either the middle of the range or the mandatory minimum, and they can recommend any sentence in your guideline range.

MS. BROWNE: But ultimately it's the judge who decides no matter what the Government recommends or your lawyer asks for. The judge is going to decide.

THE COURT: Okay? I know it's complicated. Do you want me to say it again?

THE DEFENDANT: I heard you, your Honor. I

understand. The one thing I don't understand is, you said my guideline range was at least 10 years; right?

THE COURT: That's the statutory mandatory minimum on the drug charge, but you've got a gun charge that tacks on another five years. That has to be a consecutive sentence.

So if you take the mandatory minimum on one, I have to put the five years to run after at least that 10 years.

THE DEFENDANT: Right.

THE COURT: Okay? So by operation of the statute, that's the mandatory minimum in this case. All right? Are you with me so far?

THE DEFENDANT: So far.

THE COURT: Okay. Look at paragraph 2(b) now because this is something that the Government is agreeing to do. It has agreed to recommend a two-level reduction in your offense level for acceptance of responsibility. Essentially for your pleading guilty today, they've agreed to a two-level reduction in your offense level. Do you understand that?

THE DEFENDANT: Even with the two-level reduction, I'm still at the 15 years; right?

THE COURT: Oh, yes, because that's statutory.

THE DEFENDANT: Right, mandatory minimum.

THE COURT: Right. Okay? Now, paragraph 2(c), the Government has agreed that it will recommend and file a motion for you to receive an additional one-level decrease for timely acceptance of responsibility. Okay? Do you understand that?

THE DEFENDANT: Yes.

THE COURT: I'll skip over to page 4 at the top of the page, paragraph 2(d). What that says is that the Government is free to recommend any combination of supervised release, fines and restitution. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: And then the last paragraph, 2(e), that's the one that was added by the Government this morning, and this is the Government's obligation for your accepting -- for your agreement to cooperate with them. What that paragraph says -- have you read it, Mr. Vanenburg?

THE DEFENDANT: No.

THE COURT: Why don't you take a minute and read that paragraph. No, Ms. Browne, I'm getting our computer guy up here. Have a seat and read it.

(Defendant confers with counsel)

THE COURT: Did you read that?

THE DEFENDANT: Yes.

THE COURT: Did you understand it?

THE DEFENDANT: Yes.

THE COURT: All right. I'm going to go through that with you now. As I said, this is now the Government's obligation in exchange for your agreement to help them out.

What it says is that if the Government in its sole discretion decides that you have provided substantial assistance in the investigation or prosecution of another person, they will file a motion under Section 5K1.1 of the guidelines asking the Court to impose a sentence below your guideline range or the statutory minimum sentence, those 15 years we were talking about. Okay?

So you've agreed to help them out. If you do help them out and provide them with truthful information and they believe that that's substantial assistance, they may file that motion. They're not required to because it's in their discretion. So do you understand that?

THE DEFENDANT: Yes.

THE COURT: There's no promise, but it gives you a chance to get a better sentence. Okay? Do you understand that?

THE DEFENDANT: Yes.

THE COURT: All right. Now, there's another part to that. As I said, the decision whether to file that motion is solely at the discretion of the Government. So you can't make them file it; but that's part of their agreement with you, is that if you help them out, they will consider filing such a motion. All right? Do you understand that part?

THE DEFENDANT: So even if I cooperate, they don't have to give me a 5K1?

THE COURT: That's right.

THE DEFENDANT: Yes.

THE COURT: Okay. If they do file it, there's no guarantee I'm going to grant it because I have the final say on it. Okay? That's the way it works. I just want to make sure you understand that there's no guarantee. Okay? So if they do file it, I have to decide whether or not to grant it. Okay? Do you understand that?

THE DEFENDANT: Yes.

THE COURT: And if I grant it, there's no guarantee of what sentence I'll give you because, again, then it's up to me to decide how much of a break to give you.

THE DEFENDANT: I didn't hear you. He was coughing.

THE COURT: If I do grant their motion, it will be up to me to decide how much of a break to give you. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Essentially, Mr. Vanenburg, what this all means is that there's no guarantee of what sentence you're going to get, but the plea agreement that you've made with the Government at least gives you the possibility of getting a reduced sentence. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Now, look at paragraph 3 at the bottom of page 4. What that one says is that the guidelines are not binding on the Court, which means that I can sentence you up to the statutory maximum penalties in this case. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: And now look at page 5, paragraph 4. Now, you and the Government have agreed that certain facts exist in this case, and those are laid out in those paragraphs.

Paragraph 4(a), you have agreed that you possessed two firearms that were present for and connected to the drug trafficking offense in Count I. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Do you understand in paragraph 4(b) that the substance involved in Count I was at least 5 grams of crack but less than 20 grams of crack? Do you understand that?

THE DEFENDANT: Yes.

THE COURT: That's important because you can't come back here on the day of sentencing and say, Oh, it was something else, because today you're admitting that it was crack cocaine and at least 5 grams of it. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: And finally, in paragraph 4(c), you have agreed that you used and/or possessed the two firearms set forth in Counts II and III in connection with the commission of a drug trafficking offense. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Now, if you look ahead at the bottom of that page, there's paragraph number 6. And that sets forth the maximum statutory penalties, and you have to skip over to page 6, and that lays out the maximum penalties for each of these offenses.

The maximum penalty for Count I is life imprisonment with a mandatory minimum term of 10 years,

a fine of $4 million, a term of supervised release for life with a minimum mandatory term of eight years and a mandatory special assessment of $100.

For Count II, a mandatory five years consecutive to the sentence imposed for Count I and a mandatory special assessment of $100.

For Count III, the maximum term is 10 years of imprisonment, a fine of up to $250,000, a term of supervised release of up to three years and a mandatory special assessment of $100. Do you understand those are the maximum penalties I can impose in this case?

THE DEFENDANT: Yes.

THE COURT: Do you also understand that I can impose those maximum penalties to run consecutively, that is, to run one after another? And so, therefore, the total maximum penalties for all three of these offenses are life imprisonment with a minimum mandatory term of 15 years of imprisonment, a fine of $4,250,000, supervised release for life with a minimum mandatory term of eight years and mandatory special assessments of $300.

Do you understand that those are the maximum penalties I can impose in this case without giving you an opportunity to withdraw this guilty plea?

THE DEFENDANT: Yes.

THE COURT: Now, Mr. Vanenburg, I want you to skip ahead to paragraph number 13. It's on page 9. Do you have it?

THE DEFENDANT: Yes.

THE COURT: This also is a very important provision of your plea agreement. In that paragraph you say that you understand that you may have a right to file an appeal from any sentence I impose in this case.

However, in this paragraph you have agreed to give up your right to take an appeal if the sentence I impose is within the guideline range that I find is applicable in this case or a sentence that is lower than the bottom of that guideline range. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: So if you end up with a sentence that's within the range or below it and you're not happy with it, you can't go and complain to the Court of Appeals. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: By the same token, however, the Government has not given up its right of appeal. So if they're not happy with the sentence I impose, they can go to the Court of Appeals and ask that the sentence be

overturned. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Now, Mr. Vanenburg, are those the terms of the plea agreement as you understood them at the time that you signed it?

THE DEFENDANT: Yes.

THE COURT: Has anybody made any other promises or assurances to you to get you to sign this plea agreement or to plead guilty?

(Pause)

THE COURT: Do you understand the question?

THE DEFENDANT: No, your Honor, this is hard because -- yes. Yes.

THE COURT: You understand the question?

MR. ROY: Could I ask the Court to read it again. I think he was confused.

THE COURT: The question I'm asking you, Mr. Vanenburg, is this. Has anybody made any promise to you about what sentence you're going to get? Has anybody made any assurance to you about what sentence you're going to get?

THE DEFENDANT: No.

THE COURT: Has anyone in any way attempted to force you to plead guilty in this case?

THE DEFENDANT: No.

THE COURT: Are you pleading guilty of your own free will because you are guilty?

THE DEFENDANT: Excuse me?

THE COURT: Are you pleading guilty of your own free will because you are guilty?

THE DEFENDANT: Yes.

THE COURT: Do you understand that these offenses to which you are pleading guilty are felony offenses?

THE DEFENDANT: Yes.

THE COURT: And do you understand that if your plea is accepted by the Court, you will be adjudged guilty of those three offenses?

THE DEFENDANT: Yes.

THE COURT: Do you also understand that that adjudication of guilt may deprive you of valuable civil rights, such as the right to vote, the right to hold public office, the right to serve on a jury and the right to possess any kind of firearm?

THE DEFENDANT: Yes.

THE COURT: I know that by signing the plea agreement and coming here this morning you've indicated you want to plead guilty to these charges; but before I can accept your plea, I have to make sure that you understand what rights you're giving up. I'm going to

go through those with you now.

Do you understand that you have a right to plead not guilty to any offense charged against you and to persist in that not guilty plea? In other words, no one can make you plead guilty. Do you understand that?

(Pause)

THE COURT: Mr. Vanenburg, I need your answer.

THE DEFENDANT: I don't know how to answer that, your Honor.

THE COURT: Well, it's a yes or no. Either you do or you don't understand it. You have a right to plead not guilty and to persist in that not guilty plea. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Do you understand that you would then have a right to a trial by jury?

THE DEFENDANT: Yes.

THE COURT: Do you know what a jury does?

THE DEFENDANT: Yes.

THE COURT: Tell me in your own words what a jury does.

THE DEFENDANT: Finds you guilty or not guilty.

THE COURT: Exactly. But you're giving up your right to have a jury decide your case because you're pleading guilty. You understand that?

THE DEFENDANT: Yes.

THE COURT: Do you understand that at trial you would be presumed innocent and the Government would have to prove your guilt beyond a reasonable doubt?

THE DEFENDANT: Yes.

THE COURT: And that at trial you would have the right to the assistance of a lawyer for your defense?

THE DEFENDANT: Yes.

THE COURT: Do you understand that you would have the right at trial to see and hear all the witnesses and have them cross-examined in your defense?

THE DEFENDANT: Yes.

THE COURT: That you would have the right to remain silent during the trial unless you voluntarily elected to testify in your own defense?

THE DEFENDANT: Yes.

THE COURT: And that you would have the right to the issuance of subpoenas to compel the attendance of witnesses to testify in your defense?

THE DEFENDANT: Yes.

THE COURT: And do you understand that if you decided not to testify or put on any evidence at all, that those facts could not be used against you at trial?

THE DEFENDANT: Yes.

THE COURT: Do you understand that by entering a plea of guilty to these charges and if your plea is accepted by the Court, there will be no trial and you will have given up your right to a trial as well as all of those rights associated with a trial which I've just described for you?

THE DEFENDANT: Yes.

THE COURT: Do you also understand, Mr. Vanenburg, that in the federal system parole has been abolished and if you are sentenced to prison, you will not be released early on parole? Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Now I'm going to ask the United States Attorney to summarize the evidence that the Government would present if this case were to go to trial. I want you to listen very carefully to what Ms. Browne says.

When she's through, I'm going to ask you whether you admit that you committed these offenses. So you can have a seat, but I want you to listen carefully to what the prosecutor says.

MS. BROWNE: Thank you, your Honor. If this case had gone to trial, the Government's evidence would establish the following facts:

That on May 20th of 2005, an ATF agent working undercover, Kevin McNamara, was introduced to the Defendant in New London, Connecticut; that after they had met, they talked between just the two of them and discussed the Defendant's desire to buy firearms from Agent McNamara.

The agent informed Mr. Vanenburg that he'd heard that Mr. Vanenburg was interested in buying guns, and the Defendant said that -- well, actually, he asked what Agent McNamara had available. Agent McNamara told him that he could sell Mr. Vanenburg a Smith & Wesson 9 millimeter pistol and a .380 caliber pistol.

Mr. Vanenburg asked for a more detailed description of both those firearms, which he was given; and after that description, Mr. Vanenburg offered to buy the Smith & Wesson for $450. He also asked Agent McNamara about the availability of additional firearms in the future.

On the 24th of May, Special Agent McNamara made a phone call to the Defendant which was recorded. During that conversation, Agent McNamara informed Mr. Vanenburg that he had the two handguns and asked if the Defendant was still interested in buying both of them. The Defendant said yes, he was, and offered to pay Special Agent McNamara for the guns in trade, which

Special Agent McNamara, based on his training and experience, interpreted to mean that he would be paid for the guns with a quantity of crack cocaine rather than cash.

After some additional negotiation, the Defendant agreed to buy the two firearms from Agent McNamara for $650 worth of crack cocaine. The Defendant and the special agent scheduled the deal for the next day in Westerly, Rhode Island. And Mr. Vanenburg, once again, asked Agent McNamara about the possibility of purchasing additional guns from him, with Mr. Vanenburg expressing a particular interest in the purchase of a .40 caliber Glock.

On the 25th of May, Mr. Vanenburg called Agent McNamara, and they agreed to meet at about 2:30 that afternoon at W.B. Cody's restaurant in Westerly, Rhode Island.

At about 2:40 that day, officers saw Mr. Vanenburg arrive at W.B. Cody's in a Lexus, which was being driven by a woman named Sarah Turner. Mr. Vanenburg got out of the car and entered the restaurant. And once inside, he met with Special Agent McNamara. A few minutes later, Ms. Turner joined them, and they had lunch.

After finishing their meal, the three of them

left the restaurant. Ms. Turner went to the Lexus while Mr. Vanenburg and Special Agent McNamara went to the rear of Agent McNamara's vehicle.

The Defendant showed Agent McNamara some crack cocaine and asked Agent Vanenburg (sic) for assurances that he was not a police officer. Special Agent McNamara gave him that assurance and then opened the trunk of the car and displayed the two firearms for the Defendant.

After examining the handguns, the Defendant contacted Ms. Turner and asked her to drive the Lexus over to the other car. As he waited for Ms. Turner, Mr. Vanenburg handed Special Agent McNamara a bag containing several smaller packages of crack cocaine.

When Ms. Turner drove the Lexus over to the other car, Mr. Vanenburg picked up a box containing a Smith & Wesson 9 millimeter semiautomatic pistol and a Bryco .380 caliber semiautomatic pistol, and he removed that box from the trunk of the car.

As he removed that box, Special Agent Troiano, along with other ATF agents and members of the Westerly Police Department, approached and arrested him.

They confirmed that the box held by the Defendant did, indeed, contain the two firearms; and they took possession of the crack cocaine from

Agent McNamara that the Defendant had provided him with, as well as $477 from the Defendant, $200 of which was identified as being ATF funds that had been used to purchase crack cocaine from him the day before.

Both firearms were manufactured outside the State of Rhode Island, and both were indeed capable of expelling a projectile by means of an explosive force; that is, they were firearms under the definition in the statute.

After being advised of his rights, Mr. Vanenburg provided both oral and written statements to the agents. He admitted to exchanging crack cocaine for guns on May 25th, 2005, telling Agent Troiano he was hungry to get a gun.

He also acknowledged that he previously accepted a gun as a payment for a debt and that he had additional quantities of crack cocaine in New London, Connecticut.

A chemist would testify that the substance seized from Mr. Vanenburg was 5.23 grams of cocaine base; and the agents would testify that, based on their training and experience, that the cocaine base was in the form known on the street as crack cocaine.

Those would be the facts adduced at trial, your Honor.

THE COURT: For Count II -- excuse me, Count III, I assume that you would also be introducing evidence of the Defendant's prior conviction.

MS. BROWNE: Yes, your Honor. I apologize. The evidence would include both prior convictions from Connecticut, at least one of which is a felony.

THE COURT: And you would also be introducing evidence of the guns having passed over state lines?

MS. BROWNE: Yes, your Honor. I indicated, I believe, and if I didn't, I apologize, that one of the agents had seized the firearms and confirmed that both were manufactured outside of the State of Rhode Island. So at some point in time they came across the line, state line. Thank you, your Honor.

THE COURT: Mr. Vanenburg, did you hear the summary of evidence that the Government would present if this case were to go to trial?

THE DEFENDANT: Yeah, I heard it.

THE COURT: Do you admit that in May of 2005 here in the District of Rhode Island, more precisely in Westerly, Rhode Island, that you did distribute 5 grams or more of crack cocaine to the undercover agent?

THE DEFENDANT: Yes.

THE COURT: Do you also admit that you knowingly and intentionally possessed the two firearms, that is,

the Smith & Wesson and the Bryco, and that you possessed both of those firearms in furtherance of that drug trafficking offense? In other words, you exchanged the crack for those two guns.

THE DEFENDANT: Yes.

THE COURT: You admit that?

THE DEFENDANT: Yes.

THE COURT: And you further admit that you had previously been convicted of a felony offense before you had possession of the Smith & Wesson and the Bryco?

THE DEFENDANT: Yes.

THE COURT: Do you also admit that both of those guns were manufactured outside of the State of Rhode Island; so before they came into your possession, they passed over a state line?

THE DEFENDANT: Say that again.

THE COURT: Do you admit that both of those guns were manufactured somewhere out of Rhode Island; so before you had them, they had passed over a state line?

THE DEFENDANT: I don't know. They was -- that was the ATF guns. I don't know where they came from.

THE COURT: Well, they weren't manufactured in Rhode Island. Do you understand that?

THE DEFENDANT: I didn't know that.

THE COURT: Well, talk to Mr. Roy, and he'll

explain to you why I'm asking you this question.

(Defendant confers with counsel)

THE COURT: You don't have any reason to doubt that, do you?

THE DEFENDANT: None at all.

THE COURT: All right. That's all I need to know. Mr. Roy will explain to you that's the jurisdictional basis for the charge. All right. Is there anything that Ms. Browne said that you want to correct for the record?

THE DEFENDANT: Yes. I wanted to -- she said a few things she said that was incorrect.

THE COURT: Okay. Which ones were incorrect?

THE DEFENDANT: Most of it. As far as the -- I did buy the firearms from the ATF, and I did exchange it for drugs; but it was -- the officer initiated the drugs. It was the officer who mentioned that he had more firearms. It was the -- the things that she said -- a few things wasn't right listed in that paper she read.

THE COURT: Why don't you have a chat with Mr. Roy.

MR. ROY: Very briefly, your Honor.

(Defendant confers with counsel)

THE DEFENDANT: That's what happened, your

Honor.

THE COURT: Mr. Vanenburg, I understand that you may have a difference of opinion as to who said what and what happened when. What's important, though, is that as far as the -- what we call the essential elements of the offense, I want to make sure that you agree on those. You agree that you exchanged crack for two guns?

THE DEFENDANT: Yes.

THE COURT: No question about that?

THE DEFENDANT: No question.

THE COURT: All right. And you agree that you had previously been convicted of a felony?

THE DEFENDANT: Yes.

THE COURT: Is the Government satisfied? I think I covered all of the elements.

MS. BROWNE: I believe that the Court has, yes. The Government's satisfied.

THE COURT: Okay. Mr. Vanenburg, before I take your plea, do you have any questions?

THE DEFENDANT: No. I just wanted to again apologize for the delay, your Honor.

THE COURT: Oh, no. This is very important, Mr. Vanenburg. I told you, I have to make sure that you understand all of this, and I understand that it's

very complicated. So I'm going to take all the time that we need in order to make sure that you fully understand and appreciate what you're doing and the consequences of what you're doing. Okay?

THE DEFENDANT: Yes.

THE COURT: Okay. Before I take your plea, do you need to talk to Mr. Roy?

THE DEFENDANT: I just want to state on record, like, in the future, that I wish for any other Defendant coming to your court that the lawyer will explain this whole process prior. This is all -- all this stuff is -- I didn't know, but now I understand and I agree to everything.

THE COURT: Well, I understand that it's hard. As I say, it's very complicated. So you understand what we've been talking about here this morning?

THE DEFENDANT: Yes.

THE COURT: Okay. I'll ask you, then, how you plead to the three charges in the Indictment.

THE DEFENDANT: Guilty.

THE COURT: The three charges, as you know, one is that you distributed 5 grams of crack, one is that you possessed two firearms in furtherance of a drug trafficking offense, and one is that you were a felon in possession of a firearm. Are you pleading guilty to

all three of those charges?

THE DEFENDANT: Yes.

THE COURT: Okay. Have a seat. The Court has heard from the Government with respect to the evidence it would present if this matter were to go to trial. The Court has also questioned the Defendant regarding his understanding of the nature of these proceedings and the consequences of entering a plea of guilty to these three charges.

The Court is satisfied that the Defendant, Richard Vanenburg, is fully competent and capable of entering an informed plea, that he is aware of the nature of the charges and the consequences of his plea and that his plea of guilty is a knowing and voluntary plea supported by an independent basis in fact containing each of the essential elements of the offense charged.

His plea is, therefore, accepted; and the Defendant is now adjudged guilty of the offenses charged in Counts I, II and III of the Indictment.

Now, Mr. Vanenburg, the probation office is going to prepare a pre-sentence report in this case, and they'll be asking you for information to be included in that report. I'm advising you that you may have your attorney present during that interview.

I'm also advising you that both you and Mr. Roy will have an opportunity to file whatever objections or corrections you might have to that pre-sentence report before the sentencing hearing and that both you and Mr. Roy will have an opportunity to address the Court at that sentencing hearing, which is scheduled for Friday, March 24th, at 9:30 a.m.

Mr. Roy, is that date and time okay for you?

MR. ROY: I'm sure it is. Thank you, Judge.

THE COURT: How about you, Ms. Browne?

MS. BROWNE: Yes, your Honor.

THE COURT: Okay. The Defendant is remanded. May I see counsel, please.

(Adjourned)

C E R T I F I C A T I O N

I, Karen M. Zinni, RPR-RMR-CRR, do hereby certify that the foregoing pages are a true and accurate transcription of my stenographic notes in the above-entitled case.

Karen M. Zinni, RPR-RMR-CRR

12-5-06

Date